UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OFFICE FURNISHINGS, LTD. and<br>BRATHAN PROPERTY, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY,<br><br>    Defendant. | No. 04 C 6699<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

At the time this suit was filed, Plaintiff Office Furnishings, LTD. ("OFL") was a wholesaler of office furniture located in Bellwood, Illinois, in a building owned by Brathan Property, LLC ("Brathan"). OFL leased the entire structure from Brathan. Ray Meyers was the president and sole shareholder of OFL, and the managing partner of Brathan.

In September 2002, OFL was in the market for a new insurance policy after being dropped by its property insurer. OFL's insurance broker Jim Werner, who was affiliated with the A.F. Chrissy insurance agency and had worked with OFL since 1995, broke the news of the non-renewal and began the search for a new policy. On November 22, 2002, he met with Meyers and Judith Johnson, OFL's Controller, and recommended that they purchase insurance from Defendant American Family Mutual Insurance Company ("American Family"). Werner had been in contact with Joe Kobel, an insurance agent who testified that he was an independent contractor on a part-time appointment at American Family. Kobel and Meyers testified that as part of the initial quote process, Werner submitted a series of applications, known as "accord

forms", with information about OFL. It was from these applications that an estimate was prepared.

On December 17, Kobel met with Meyers, Johnson, and Werner in order to complete the insurance application. According to Meyers, this application was about 30 pages long with "handwriting filling in the blanks." This was the first time Meyers had seen the application. After the introductions were made, Meyers was "called out of the office, and [Kobel] told Judy that she could sign several of the sections[.]" Meyers would return to the meeting to sign the sections he was required to sign. The application was dated November 29, 2002 by Kobel. According to Kobel, that was the date that Werner "probably called me and said Office Furnishings has chosen to do business with American Family[.]" At the bottom of the application was Kobel's signature, on the line marked "Agent."

According to Kobel, the application was not complete when the meeting began, though portions of it had been filled out using the applications that had been provided by Werner for use in preparing an estimate. The remaining portions, including the age and composition of the roof and the age of the heating system, were completed at the meeting using information that Kobel testified was provided by either Johnson or Meyers at the meeting. Meyers testified that he did not read the application prior to signing it. By signing the application, both Meyers and Johnson certified that all the statements in the application were accurate, and that American Family could rely upon the statements in issuing the policy. During his testimony, Meyers admitted to several misrepresentations contained in the application, including the age and type of roof, the age of the heating system, the owner of the building, and the presence of other tenants. On January 29,

2003, American Family issued a policy to OFL, effective December 1, 2002 through December 1, 2003.

On January 31, 2003, OFL claimed that its roof shattered, causing snow, ice and rain to leak into its warehouse, damaging inventory. OFL submitted this claim to American Family, and filed four Sworn Statements in Proof of Loss. American Family subsequently denied the claim. OFL then filed suit against American Family, alleging breach of contract. At trial, American Family put forth several affirmative defenses excusing its performance under the contract: (1) OFL by and through its representative made intentional misrepresentations in the insurance application; (2) OFL by and through its representatives made material misrepresentations during the claim investigation process, including the examination under oath; (3) OFL by and through its representatives, made material misrepresentations in the insurance application; and (4) the shattered roof claimed by OFL was a non-fortuitous event from wear and tear, deterioration, shrinking and expansion, and was thus not covered by the policy. OFL argued that: (1) any misrepresentations in the application and claims process were not material; (2) even if they were, they were not made intentionally; (3) any material misrepresentations that may have been in the application were not made by OFL or its representatives, since Kobel, acting as American Family's agent was responsible for completing the application; and (4) the shattered roof was indeed a fortuitous event. On June 19, 2009, the jury returned a verdict in favor of OFL, awarding OFL $958,369.00 in damages. The jury found the following: (1) OFL had an enforceable contract; (2) OFL had performed all of its obligations under the contract; (3) American Family had breached the contract; (4) OFL made no intentional misrepresentations in the insurance application; and (5) OFL made no material misrepresentations in presentation of its

claim; (6) OFL was not responsible for making material misrepresentations in the insurance application; and (7) the roof incident was not excluded under the policy.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 50(b) permits the non-prevailing party to make a renewed motion for judgment as a matter of law, or in the alternative, to move for a new trial under Rule 59. In considering whether to grant American Family's renewed motion, I must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002). I may not make any credibility determinations or weigh the evidence presented at trial. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000). "A verdict will be set aside as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Staub v. Proctor Hosp.*, 560 F.3d 647, 658 (7th Cir. 2009) (citation omitted).

In ruling on a motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a), the court must "determine whether the verdict is against the weight of the evidence ... the damages are excessive, or ... for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (quotations and citations omitted). In considering whether to grant a new trial, the evidence must be viewed in the light most favorable to the prevailing party, and determinations of the weight and credibility of the evidence presented should be left to the jury. *Id.* A jury verdict should not be set aside "if a reasonable basis exists in the record to support the verdict." *Id.*

4

A new trial may be warranted where there was a prejudicial evidentiary error at trial. *Staub*, 560 F.3d at 658. However, "a new trial is not warranted where the properly considered evidence is insufficient to support the jury's verdict[,]" and in that case, judgment as a matter of law may be entered in movant's favor. *Id.*

**III. DISCUSSION**

Arguing that the jury's verdict is against the manifest weight of the evidence, American Family now renews its motion for judgment as a matter of law, and moves, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a). American Family makes several arguments in support of its motion, however I need not address all arguments put forth by Defendant. I find that the renewed motion for judgment as a matter of law should be granted because the weight of the evidence presented at trial established that OFL was responsible for material misrepresentations in the application.[1]

American Family argues that even if Kobel was acting as Defendant's agent when he completed the insurance application and included material misrepresentations, Defendant is still entitled to deny coverage. Kobel testified that he completed much of the insurance application

---

[1] American Family made the following arguments in support of its motion: (1) OFL cannot recover under the policy for building damage because it did not own the building and the lease between Brathan and OFL was not in evidence; (2) American Family was unfairly prejudiced by the court's refusal to submit special interrogatories and estoppel jury instructions to the jury; (3) Meyers and OFL made several material misrepresentations to American Family during the presentation of the claim; (4) the jury's award of damages for the business personal property of the building is based on speculative and unreliable testimony; (5) damage to the contents resulted from a fortuitous event, and should be excluded under the contract; (6) American Family was prejudiced by the court's refusal to submit a jury instruction that a party is bound by a signed application; and (7) the jury pool was tainted during voir dire when a prospective juror made disparaging comments about her property claim disputes with American Family.

with information provided by Jim Werner, OFL's insurance broker, via the accord form. Both parties admit that Kobel met Meyers and Judy Johnson, OFL's Controller, for the first and only time when they signed the application. Both parties also agree that many portions of the application were completed prior to the date of signing. In his testimony, Meyers stated that Kobel must have gotten the information from the accord forms completed and submitted by Werner in his capacity as OFL's insurance agent. When asked why he did not read any part of the application, Meyers explained that it was "Because I trusted Jim Werner." Under the law, Kobel and Defendant were entitled to rely on the information provided by OFL and its agents, and there is no duty on the insurer to conduct an independent investigation of the truthfulness of insured's application answers before issuing a policy. *See Brandt v. Time Ins. Co.*, 704 N.E.2d 843, 846 (Ill. App. 1998). Although there was no evidence presented at trial that Werner actively participated in filling out the application, and it is Kobel's name and signature that appear on the form, the weight of the evidence shows that Kobel obtained the information completed prior to the December 17th meeting from Werner via the accord form, and that the misrepresentations therein are attributable to OFL. No evidence was presented that Kobel inaccurately transcribed the information.

Kobel testified that the section of application that inquired as to the age and composition of the roof and the age of the heating system was not completed prior to the December 17th meeting. Kobel asked "[e]ither Ray or Judy" these questions and recorded their answers. According to Kobel, the meeting took between an hour and an hour and a half. Again, no evidence was presented that Kobel inaccurately recorded responses given by Meyers and Johnson.

Meyers testified that the meeting took only 15-20 minutes. Both he and Johnson testified that during the meeting neither was ever asked to give any information that was written into the application. If Meyers and Johnson are correct in their assertion that the application was completed in full prior to the meeting, Kobel needed to get the information from some source. There was no evidence presented that Kobel invented it, that it was inaccurately transcribed, or that he had any independent knowledge of it. So even if the testimony of Meyers and Johnson is true, the only reasonable inference is that Kobel got the information about the roof and heating system through Werner, either via the accord form or orally at the December 17th meeting. In either case, OFL is responsible for these misrepresentations as it is undisputed that Werner was acting as its agent.

In an attempt to preserve the verdict, Plaintiffs make several counter arguments. First, Plaintiffs dispute the materiality of the misrepresentations in the application, including those regarding occupancy by other tenants and the ages of the roof and heating system. This argument is of little merit in light of testimony by American Family's underwriter, Sybil Thompson, that the application would not have been approved had Defendant known the true ages of the roof and heating system. According to Plaintiffs, it is clear from the verdict at trial that the jury did not find Thompson credible. While it is true that I must leave credibility determinations to the jury, Thompson's credibility was never impeached, no conflicting testimony was presented, and Plaintiffs make no suggestion that Thomspon's demeanor was questionable. Plaintiffs provide no foundation for the assumption that Thompson's testimony was not credible other than the fact that the jury found in Plaintiffs' favor. But this cannot support an assumption of immateriality, since there is no basis for a jury to find that Thompson's testimony lacked credibility. *Reeves*,

530 U.S. at 150-151 (2000) (In entertaining a motion for judgment as a matter of law, "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'") (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995)). There is no dispute that the information provided in the insurance application with regard to the age and composition of the roof and the age of the heating system was incorrect, and the evidence at trial showed that it was indeed material.

Plaintiffs next maintain that Werner neither signed nor actively participated in filling out the application. But Kobel testified that much of the application was completed using the initial application submitted by Werner, OFL's agent, according to Meyers. The evidence supports this testimony, since Meyers himself testified that he had never met Kobel before the meeting, and that much of the information on the application came from Werner's initial submission. Any missing information was obtained at the meeting with Werner, Meyers and Johnson. There was no evidence at trial that Kobel had any independent knowledge of the information contained in the application. Whether the misrepresentations were made in the initial application submitted to Kobel, or verbally at the meeting, they came from either Werner, Meyers or Johnson, all of whom were acting as agents of OFL. Even if the jury found, as it reasonably could, that Kobel was acting as American Family's agent, and that Meyers and Johnson accurately testified about the length and substance of the meeting, the weight of the evidence demonstrates that it was Werner, not Kobel, who was responsible for providing the information used to complete the

8

application. For this reason, I find there was no reasonable basis to support the verdict, and that a judgment should be entered in favor of Defendant American Family.

ENTER:

James B. Zagel
United States District Judge

DATE: November 18, 2009